## Waddell *v.* Shriber et al., Appellants.

Argued November 18, 1975. Before WATKINS, P. J., HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ. (JACOBS, J., absent).

*Robert Engel,* with him *Alan A. Garfinkel, Foster S. Goldman, Jr.,* and *Berkman, Ruslander, Pohl, Lieber & Engel,* for appellants.

*Charles B. Knox,* with him *James D. Morton, Clayton A. Sweeney, George L. Cass,* and *Buchanan, Ingersoll, Rodewald, Kyle & Buerger,* for appellee.

OPINION BY HOFFMAN, J., February 2, 1976:

As the result of the dissolution of a security brokerage partnership of which the appellee, Marshall Waddell, was a partner, and the subsequent formation of a new partnership by the appellee's former partners, the appellee commenced actions in equity and law. Our Supreme Court heard the appeal of the suit in equity, and on November 26, 1975, it stayed the proceedings in equity pending arbitration. *Waddell v. Shriber*, —— Pa. ——, 348 A. 2d 96 (1975).

The facts, as set forth by our Supreme Court, are as follows:

"On September 24, 1974, thirteen of the fifteen partners of appellant Babbitt, Meyers & Waddell elected to dissolve the partnership. Under the partnership agreement, dissolution could be affected at the instance of any partner. A committee comprised of appellants Shriber, Rainier, and Naft was named to direct the liquidation of the dissolved partnership. Although appellee attended this meeting, he abstained from the decision to dissolve the partnership upon the advice of counsel.

"The following day, appellee's former partners formed a new partnership, appellant B.M.W. & Co. The liquidation committee of the dissolved partnership concluded that liquidation could be accomplished by allowing each of the former partners other than appellee to contribute his share of the dissolved partnership's assets to B.M.W. & Co. and by tendering to appellee his proportional share of the assets of the dissolved partnership in cash. The committee, with the aid of a certified public accountant retained by the dissolved partnership, calculated appellee's share and offered it to him. Appellee, however, rejected the amount offered as inadequate.

"On October 2, 1974, appellants pursuant to a provision in their agreement as allied members of the

New York Stock Exchange (NYSE) submitted the resulting dispute to the Board of Arbitration of the NYSE which accepted jurisdiction and which sent appropriate notice to appellee." *Waddell v. Shriber,* supra at ——, 348 A. 2d at 98.

Four weeks later, appellee commenced his actions in equity and law. In his complaint in law, appellee alleged that the appellants conspired to convert his interest in the partnership of Babbitt, Meyers & Waddell, and that as part of their conspiracy, the appellants defamed the appellee. On November 8, 1974, a hearing was held in the Court of Common Pleas of Allegheny County. At the beginning of the hearing, the appellants petitioned the court to stay the action until the matter had been resolved by arbitration. After argument, the court denied the motion because it determined that the dispute was not arbitrable. This appeal followed.

The individual parties to this appeal were allied members of the NYSE during the existence of the dissolved partnership. As a prerequisite to becoming an allied member, each individual signed an application which provided in part:

"I further state that I have read the Constitution and Rules of the Board of Governors of the New York Stock Exchange and I hereby make application to become an allied member of the Exchange. I hereby pledge myself to abide by the Constitution and Rules of the Board of Governors of the New York Stock Exchange as the same have been or shall be from time to time amended, and by all rules and regulations adopted pursuant to the Constitution. . . ."

"Any controversy between parties who are members, allied members, member firms or member corporations shall, at the instance of any such party, and any controversy between a non-member and a member or allied member or member firm or member

corporation arising out of the business of such member, allied member, member firm or member corporation, or the dissolution of a member firm or member corporation, shall at the instance of such non-member, be submitted for arbitration, in accordance with the provisions of the Constitution and rules of the Board of Directors."

In his complaint in equity, appellee sought (1) an injunction restraining the individual appellants and B.M.W. & Co. from access to the assets of the dissolved partnership, and (2) the appointment of a receiver to administer the assets of both the dissolved partnership and B.M.W. & Co. and to supervise the liquidation of the dissolved partnership. In the appeal of the suit in equity, our Supreme Court held that the parties' contract "mandates that any dispute arising from their relationship as members of the NYSE be submitted to arbitration at the request of one of the parties. This dispute involves the means by which that relationship should be terminated. They have therefore agreed to resolve it by arbitration."[1] *Waddell v. Shriber,* supra at ——, 348 A.2d at 102. In his conversion claim, appellee asserts that the appellants conspired to convert his interest in the dissolved partnership and that they appropriated the assets of the dissolved partnership without compensating him. Like the equity dispute, this claim involves the means by which the parties' relationship should be terminated. Our Supreme Court's opinion, therefore, mandates that this

---

1. In its opinion, our Supreme Court noted that "[i]n several recent cases, we have emphasized that '[s]ettlement of disputes by arbitration [is] no longer deemed contrary to public policy. In fact, our statutes encourage arbitration and with our dockets crowded and, in some jurisdictions, congested, arbitration is favored by the courts.' *Mendelson v. Shrager,* 432 Pa. 383, 385, 248 A.2d 234, 235 (1968). *Flightways Corp. v. Keystone Helicopter Corp.,* 459 Pa. 660, 662-663, 331 A.2d 184, 185 (1975); *Borough of Ambridge Water Authority v. Columbia,* 458 Pa. 546, 549, 328 A.2d 498, 500 (1974)."

claim be arbitrated. Appellee contends, however, that his claim of defamation is not arbitrable.

The NYSE constitution provides for the arbitration of "any controversy." While it is true that the intentional tort of defamation is not normally arbitrated, the agreement to arbitrate does not exclude this claim. The phrase "any controversy" is certainly broad enough to embrace tort as well as contractual disputes, the only limitation being that the dispute has its roots in the applicable relationship between the parties. See *Macchiavelli v. Shearson, Hammill & Co., Inc.*, 384 F.Supp. 21 (E.D.Cal. 1974) ; *Berman v. Dean Witter & Co., Inc.*, 119 Cal. Rptr. 130 (1975). Specifically, libel actions have been held arbitrable. See *Legg, Mason & Company, Inc. v. Mackall & Coe, Inc.*, 351 F.Supp. 1367 (D.D.C. 1972) ; *Lewsadder v. Mitchum, Jones & Templeton*, 111 Cal. Rptr. 405 (1973) ; *Osborne & Thurlow v. Hirsh & Co.*, 172 N.Y.S. 2d 522 (1958). In the instant case, the alleged defamation arose out of the parties' business relationship which had resulted in the dissolution of their partnership and the formation of another partnership by appellee's former partners. Appellee's defamation claim is, therefore, arbitrable.

The order of the lower court is reversed and the proceedings stayed pending arbitration.