Abraham N. Geller, J.
Upon the trial of this action to recover a down payment of $6,700 on the ground of fraud, terminating in a discharge of the jury by reason of inability to agree upon a verdict, the court reserved decision on defendant’s motions to dismiss the complaint and for a directed verdict in his favor. The court has reviewed the entire record and has concluded that, in light of certain indisputable factors, particularly those established by analysis of the charge of fraud and the documentary evidence, the motion for a directed verdict must be granted, since it would be required to set aside a contrary verdict for legal insufficiency of the evidence (Civ. Prac. Act, § 457-a).
Plaintiff corporation — actually represented by two real estate operators having considerable experience in the construction of buildings — made the payment at the time of the signing of a written contract for the purchase of a tract of land owned by defendant, an experienced builder.
Plaintiff’s complaint alleges that defendant represented: “ that the said tract of land owned by him was eminently suitable for the erection of an apartment house; that the quality of the land was suitable for excavation purposes and that the plaintiff would not have to excavate more than the usual number of feet below the surface to find sufficient hard ground or rock upon which to lay a foundation; and that the plaintiff need not worry about borings since the defendant had procured and paid for such borings and would give the results thereof to the plaintiff. ’ ’
The testimony on behalf of the plaintiff was that the ‘ ‘ usual ’ ’ number of feet for an excavation meant three feet below the surface. Leaving aside, then, the characterizations and matters of opinion included in the alleged representation, the representation of a material fact, which could be the legal basis for a claim of fraud, is that plaintiff would not have to excavate more than three feet.
The complaint then alleges that after the contract had been entered into, defendant delivered to plaintiff a copy of the borings “ which showed that the land would have to be excavated *309 to a depth of over 50 feet to reach a suitable surface upon which to erect a foundation.”
After a first trial, which ended in a mistrial, plaintiff moved for leave to serve an amended complaint, changing the representation as to the “ usual ” number of feet to “ two or three feet ” and adding a representation, “ That the plaintiff could erect an apartment building, and particularly its foundation, without the use of piles. ’ ’ Plaintiff now alleged that the borings indicated the necessity to excavate to a depth, not of 50 feet, but over 25 feet. The motion was denied and the Appellate Division affirmed (14 A D 2d 858), stating: “ In affirming the court does not reach the question whether any or all of the fraudulent representations as alleged in the proposed amended complaint would be admissible under the present complaint.”
When, on this trial, evidence on the subject of the conversations, need or use of piles was offered by plaintiff, defendant objected on the ground that the matter of piles could not, in view of the denial of plaintiff’s application to amend, be considered as a basis for the fraud charged in the complaint. The court allowed the testimony as being 1 ‘ merely evidentiary ’ ’ in connection with and support of the misrepresentations asserted in the complaint. In its charge to the jury, the court explicitly and repeatedly emphasized that the only charge of fraud to be decided was that plaintiff would not have to excavate more than three feet, not any alleged misrepresentation as to the use of piles; that the jury could not base its verdict on any alleged representation as to piles, because plaintiff had not charged it in its complaint; and that the evidence as to piles could be considered only as bearing upon plaintiff’s claim that the alleged misrepresentation as to the depth of the excavation was material, serious and important. In any event, under the existing circumstances and in view of the experience in this business by both parties, any alleged representation that it would not be necessary to use piles for a foundation must be deemed to be a mere matter of opinion as to a future contingency and not such a statement of material fact as would support a claim of fraud.
Accordingly, the sole charge of fraud upon which plaintiff’s case rests is the alleged representation that plaintiff would not have to excavate more than three feet below the surface of the ground in order to lay a foundation for an apartment house.
The testimony on behalf of plaintiff was that defendant had promised to produce, at the time and place agreed upon for the execution of the contract, a boring map which he had had made in connection with his plans for the erection of an apartment house; that he failed to do so, but gave assurances as to the *310 alleged representations, in reliance upon which plaintiff signed the contract and made the down payment ■ and that it was not until later that week that plaintiff was able to obtain a copy of the boring map from defendant’s architect, showing that it would be necessary to excavate to a depth of about 10% feet (which, incidentally, is considerably less than the 50 feet originally claimed or even the 25 feet alleged in the proposed amended complaint).
But defendant did bring to this appointment 4 drawings of the layout of the building and the complete set of plans, consisting of 11 sheets, made by his architect. Plaintiff has admitted that during the more than two hours of negotiation preceding the signing of the contract, these plans were examined in detail and discussion had as to various features relating to the construction of the apartment house. Indeed, a rider to the contract provided, among other thing's, that the purchase price included payment for these plans, to be delivered at the closing to the plaintiff; that plaintiff had the option of canceling the contract if said plans were not approved by the Building Department; and that defendant “ represents ” that full payment therefor had been made to the architect.
It is quite clear from Exhibit B that the plans provided for excavating to a depth of approximately 10 feet, the same depth as indicated by the borings ordered to be made to enable the architect to make those plans. Sheet No. 1 has a “ Plot Plan,” which states that the average curb elevation is 45.8 feet (above sea level). This tract of land was about 9 feet lower than the curb level, or at an elevation of 36.6 feet (above sea level). Each of the other 10 sheets of the plans states at each point shown the particular elevations for the items covered therein. Sheet No. 8 shows the elevator pit an elevation of 30.0 feet, and underneath it markings indicating an additional approximate 4 feet for footings, thus going down to an elevation of about 26 feet, or approximately 10 feet below the grade of this tract of land.
At the trial plaintiff’s witnesses admitted that the plans had been available for inspection at the time of contract, that they could read plans and had studied them but, they claimed, not as closely as the examination then being conducted in court. They then admitted that the plans showed that it was necessary to excavate to a depth of at least 8 feet.
Thus, even assuming that the alleged oral representation as to the “ usual ” number of feet, or 3 feet, had been made by defendant — which is incredible in view of the fact that the set of plans brought to the contract negotiations by defendant clearly showed that excavation was planned for a depth of *311 about 10 feet — plaintiff is not permitted to claim that it relied thereon. The well-settled rule is that where ‘ ‘ the other party has the means available to him of knowing, by the exercise of ordinary intelligence, the truth or the real quality of the subject of the representation, he must make use of those means, or he will not be heard to complain that he was induced to enter into the transaction by misrepresentations ” (Schumaker v. Mather, 133 N. Y. 590, 596; see, also, Sylvester v. Bernstein, 283 App. Div. 333, affd. 307 N. Y. 778).
Consideration may also be given to the fact that the contract contained a disclaimer clause that all understandings were merged therein and that neither party was relying on any statement or representation not embodied in the contract made by the other. While this clause lacks the specificity required to preclude as a matter of law this claim of an oral representation with respect to soil conditions (see Danann Realty Corp. v. Harris, 5 N Y 2d 317), it lends support to the view that no such oral representation was in fact made (cf. Danann Realty Corp., supra, pp. 332-333). The rider did make express provision as to certain representations. Plaintiff testified that the ‘ ‘ primary purpose ” of the discussions preliminary to the signing of the contract was with relation to the matter of “ soil conditions.” Plaintiff was represented by able and experienced counsel. It is reasonable to conclude that had an oral representation been made as to the depth of the excavation required, which could not be ascertained from the plans, it would have been inserted in the rider, particularly since defendant had not brought the boring map, as allegedly promised by him.
The insufficiency of plaintiff’s claim is also established by its own testimony as to what it did and what it failed to do upon obtaining a copy of the boring map later that week and purportedly discovering at that time that it would be necessary to excavate to a depth of about 10% feet. Plaintiff maintains that it made inquiries to ascertain the cost of using piles for a foundation, and, only after completing its investigation, did it get in touch with defendant to ask for a reduction in price because of the alleged extra cost involved in using piles as compared with the foundation of concrete footings provided for in the plans. The closing was adjourned by stipulation and thereafter plaintiff sought to rescind the contract when defendant refused to give any allowance.
It is admitted that defendant was not notified of any claim whatever until more than two months after the signing of the contract. Plaintiff has taken the position that it discovered the falsity of the alleged representation within the week following *312 the signing. The cases hold that ‘ ‘ as matter of law, right to rescind must be exercised promptly after the injured party learns of the wrong” (New York Tel. Co. v. Jamestown Tel. Corp., 282 N. Y. 365,372; see, also, Sy-Jo Luncheonette v. Marsav Distrs., 279 App. Div. 715, affd. 304 N. Y. 747).
It is obvious from plaintiff’s actions following receipt of the boring map that it did not promptly exercise its right to rescind, assuming it had such right. Indeed, its actions are inconsistent with its claim, as pleaded, that there was a misrepresentation as to the required depth for excavating. The borings disclosed not that it was necessary to use piles but merely to excavate to a depth of about 10 feet. Had such a representation really been made, it would be natural to expect that notice of rescission to defendant would have been given immediately upon learning of its falsity.
Plaintiff sought to try the case as if the principal issue was whether defendant had represented that it would not be necessary to use piles. Its subsequent acts of investigation and negotiation might be understandable if that were the issue. But the sole issue, as pleaded and as indicated herein, is the alleged representation as to the required depth of the excavation being the usual number or three feet; and on that issue, it must be held that the evidence, iboth in its separate aspects and on the whole case, would be legally insufficient to support a verdict for plaintiff.
Actually, the entire subject of piles appears to have been injected into the case as an afterthought. Long after this action had been instituted, defendant did build this apartment house and decided then to use piles instead of concrete footings, as originally provided in the plans. Plaintiff learned about this and then attempted to amend its complaint to add an alleged representation that piles would not be required to build the foundation. It is apparent that, since the original plans — whose authenticity cannot be doubted — provided for concrete footings while the actual construction was later made with piles, the question as to which method would be more suitable and cheaper for an excavation depth in the neighborhood of 10 feet, was in the area of opinion rather than fact. Incidentally, it may be noted that plaintiff did not prove that it was necessary to use piles.
There is no proof of fraud in this case. Plaintiff has attempted to build a case around the circumstance that defendant did not bring the boring map with him at the time of the contract. But all that the borings showed was that it was necessary to excavate to a depth of about 10 feet — and that very information was *313 graphically and clearly delineated in the actual plans brought by him and examined at that time. Defendant’s motion for a directed verdict is accordingly granted, and the Clerk is directed to enter judgment in his favor.